5004612

U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

DEC 19 2014

CHRIS R. JOHNSON, Clerk
By
     Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| **KRYSTAL KLEAR POOLS, INCORPORATED**<br><br>    Plaintiff<br><br>vs.<br><br>**POOL CORPORATION;**<br>**SCP DISTRIBUTORS LLC; and**<br>**ROYAL WHITE CEMENT, INC.**<br><br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)  Case Number 14-5386 TLB<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT
## JURY TRIAL REQUESTED

COMES NOW, Krystal Klear Pools, Incorporated (**Krystal Klear** hereinafter), and for its cause of action against Pool Corporation (**Pool Corp** hereinafter), SCP Distributors LLC (**SCP** hereinafter), and Royal White Cement, Inc. (**Royal White** hereinafter), and states that:

### Parties

1. Plaintiff Krystal Klear, is an Arkansas corporation with its principal place of business in Springdale, Washington County, Arkansas.

2. Defendant SCP is a Delaware corporation, authorized to do business in the State of Arkansas, with its principal place of business at 109 Northpark Boulevard, Fourth Floor, Covington, Louisiana 70433. SCP has a business location at 6201 Prairie Drive, Fort Smith, Arkansas 72916.

3. Defendant Pool Corp. is a Delaware corporation with its principal place of business at 109 Northpark Boulevard, Fourth Floor, Covington, Louisiana 70433. While not

authorized to do business in the State of Arkansas, it is the parent corporation SCP. The activities of SCP are directly controlled by Pool Corp.

4. Defendant Royal White is an Illinois corporation with its principal place of business at 8316 East Freeway, Houston, Texas. While not authorized to do business in the State of Arkansas, it has customers throughout the United States and has distributors, including SCP, within the State of Arkansas. Its product is sold within the State of Arkansas.

### Jurisdiction and Venue

5. This Court has a diversity jurisdiction over this action and the parties pursuant to 28 U.S.C. § 1332. The controversy exceeds $75,000.00.

6. Plaintiff has its principal place of business in Springdale, Washington County Arkansas, within this district and within the Fayetteville Division.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in the Western District of Arkansas because essential parts of the events giving rise to Plaintiff's claim occurred in this district and because Defendant SCP maintains and operates a distributorship in this district, distributes products within this district and Defendant Royal White's product is sold through its distributor, SCP within this district.

### Facts

8. Krystal Klear is in the business of maintaining, repairing and plastering swimming pools within the State of Arkansas, the Southwestern region of the State of Missouri, and the Eastern region of the State of Oklahoma.

9. Defendant SCP, from its Fort Smith, Arkansas outlet, is Plaintiff's principal supplier of equipment and supplies for its business operation.

10. Defendant SCP is a wholly owned subsidiary of Pool Corp and is directly controlled by Pool Corp.

11. Defendant Royal White is the company which sells the product, Royal White Cement, to Pool Corp and/or SCP.

12. During the years 2012 and 2013, Plaintiff purchased from SCP its white portland cement, which was marketed under the trade name Royal White Cement, for all of its plasterwork relating to the claim herein and is designated as **Product** hereinafter.

13. The plaster which Plaintiff uses for swimming pool construction consists of a mixture of marble dust, water and the Product (Royal White Portland Cement).

14. Plaintiff has installed swimming pool plaster for in excess of 17 years.

15. Each of its crews operate under the direction and supervision of the company's president, Kendall Holloway, who personally has 30 years experience plastering swimming pools.

16. Every crew employee has at least 10 years experience plastering swimming pools.

17. During the years 2012 and 2013, the forty-three (43) newly plastered swimming pools which Krystal Klear plastered or replastered using the Product, subsequently resulted in discoloration after the plastering process. These 43 swimming pools are located primarily within this division of the Western District of Arkansas, but also within the states of Missouri and Oklahoma.

18. The discoloration, which occurred after various intervals of time after plastering, is bluish to black color with a representative photograph attached hereto as **Exhibit A** and made a part hereof.

19. After extensive analysis, Defendant SCP, through its representative at the Fort Smith, Arkansas, location, and Defendant's corporation office, concluded that the discoloration was a result of the product named "Royal White Portland Cement."

20. Krystal Klear agrees with SCP's analysis. The discoloration in the plaster resulted from defective "Royal White Cement" sold by SCP to Krystal Klear.

21. A representative purchase document between Plaintiff and a Defendant of one of the transactions whereby Plaintiff purchased the Royal White Portland Cement from Defendant is attached hereto marked **Exhibit B** and made a part hereof as though set forth word for word line for line.

22. The product failed to meet the warranted specifications of whiteness (Y) value of 86.

23. The product failed to meet the warranty of merchantability.

24. The product failed to meet the warranty for the particular purpose for which it was sold, i.e., white Portland cement, for swimming pool surfacing.

25. After the 29th day of July 2013, SCP recalled its Royal White cement and terminated sale of that product.

26. Plaintiff has a legal obligation and is liable for warranty claims from the owners of the 43 swimming pools plastered or replastered using the Product.

27. Plaintiff has begun the expensive and laborious task of repairing the discolored swimming pools which it plastered using the Product during 2012 and 2013.

28. The replastering process has been thwarted because the discoloration in the Product, Royal White, leaches into the newly plastered repair such that the repaired swimming pool also exhibits the same discoloration, thus, damaging other property.

### Notice

29. Plaintiff notified Defendants of the discoloration problems on multiple occasions during the years 2012 and 2013.

30. Plaintiff again notified Defendants of the defect by letters dated May 19, 2014, July 22, 2014 and October 7, 2014, which included detailed information including the locations of the 43 swimming pools and documented purchase information concerning the Product.

### CAUSES OF ACTION

### Breach of Express Warranty

31. The Product was sold to Plaintiff with an express warranty of having a whiteness (Y) value of 86.

32. The Product fails the whiteness warranty represented in the product specifications, a copy of which is attached hereto as **Exhibit C**. As specified previously, a representative photograph of the blue to black coloration is attached as **Exhibit A.**

33. Another representative photograph of the discoloration is attached as **Exhibit D**. This photograph illustrates the difference in coloration of the original plaster and the Royal White Cement (Product) which was used to replaster the swimming pool.

### Breach of Implied Warranty of Fitness for Particular Purpose

34. That at the time of sales of the Product to Plaintiff, SCP had reason to know the particular purpose for which the Product, Royal White Cement, was required – swimming pool plaster.

35. That Defendants had reason to know that the buyer was relying on their skill or judgment to select or furnish suitable Product, Royal White Cement.

36. That the Product, Royal White Cement, was not fit for the particular purpose for which it was required.

37. That Krystal Klear has sustained damages as specified hereinafter.

38. That this unfitness of the Product, Royal White Cement, was a proximate cause of Krystal Clear's damages.

39. That Krystal Klear was a corporation which all Defendants would reasonably have expected to use the Royal White Cement.

40. That Krystal Klear notified all Defendants within a reasonable time after Krystal Klear discovered or should have discovered that the Royal White Cement was not fit for the particular purpose for which it was required.

## Breach of Implied Warranty of Merchantability

41. That Defendants sold Royal White Cement which was not fit at the time Defendants sold it for the ordinary purposes for which such goods are used, was not adequately labeled and did not conform to any promises or affirmation of fact made on the container or label.

42. That Krystal Klear has sustained damages as specified hereinafter.

43. That such condition of the Product, Royal White Cement, was a proximate cause of Krystal Klear's damages.

44. That Krystal Klear was a corporation which Defendants might reasonably expect to use the Royal White Cement.

45. That Krystal Klear notified Defendants within a reasonable time after Krystal Klear discovered or should have discovered the breach of this implied warranty.

### Negligence

46. Defendants had a duty to control the quality of its Product, which it placed in the stream of commerce.

47. Defendants breached that duty by failing to exercise reasonable care to control the quality of its Product which it placed in the stream of commerce.

48. That Defendants ought to have known in light of the surrounding circumstances that its failure to control the quality of its Product would naturally and probably result in damage to Plaintiff.

49. Notwithstanding, Defendants continued their conduct in reckless disregard for the consequences.

50. Plaintiff suffered damages as specified hereinafter from Defendants' negligence and reckless disregard for the consequences.

### Elements of Damages

51. Elements of damages include recovery of the cost of the product purchased, the cost of warranty repair of the 43 swimming pools damaged by replastering the pools, including completed and uncompleted repairs, the damage to other property, including Plaintiff's equipment contaminated by the Product, the discolored contaminated plaster used to repair defective plaster which was mixed using the defective Product, the damage to the marble dust and water used in the plastering process with the Product, loss of valuation of business, lost profits and attorney's fees.

52. The warranty repairs, though once believed to be only replastering, are now known to be more extensive because of the leaching of discoloration through the replaster which resurfaced the defective plaster which incorporated the Product.

53. Therefore, the cost of removal of the defective plaster is deemed a necessary element of damages for warranty repair.

54. During the 2013 year, Krystal Klear terminated its plastering work because most every plaster job resulted in discoloration and property damage. As a proximate result, Krystal Klear lost income.

55. Krystal Klear provided subcontract replastering for Crystal Clear Pools; however, as a direct and proximate result of the defective product, Krystal Klear lost its subcontract work with Crystal Clear Pools.

56. At public events, including sporting events, when Krystal Klear president Kendall Holloway was in the bleachers, he was verbally attacked by an unsatisfied customer. The general public witnessed this event. Krystal Klear's business reputation was diminished by that event and other similar events; all the proximate result of the unmerchantable product sold by SCP to Krystal Klear.

57. Defendants knew or ought to have known, in light of the surrounding circumstances, that its conduct would naturally and probably result in damage and that it continued such conduct in reckless disregard of the consequences from which malice may be inferred. Therefore, Plaintiff is entitled to punitive damages.

58. Plaintiff demands a jury trial.

WHEREFORE, Plaintiff prays for damages in an amount in excess of $75,000.00, for the cost of the defective Product purchased by Krystal Klear from Defendants, for property damage and damage to other property resulting from the use of the said product; for cost of repairing the swimming pools replastered with the defective Product, including both completed repairs and uncompleted repairs; for loss of profit resulting

from temporary termination of the plastering business by Krystal Klear; for loss of business valuation; for loss of business reputation; and for punitive damages, together with reasonable attorney fees and costs expended, together with any and all other proper relief.

Respectfully Submitted,

By: _____
E. Kent Hirsch (Ark. Bar #81-087)

**Hirsch Law Firm, P.A.**
107 W. Emma Ave.
Springdale, AR  72764
Tel: (479) 751-0251
Fax: (479) 751-0490
kent@hirschlawfirm.com